**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOCELYN R.H.,**[1] | ) | |
| | ) | **No. 24 CV 3442** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | **October 27, 2026** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Jocelyn R.H. seeks disability insurance benefits primarily based on physical impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Jocelyn's remand request is denied:

**Procedural History**

Jocelyn filed her benefit application in August 2019, claiming disability onset on November 1, 2017. (Administrative Record ("A.R.") 122, 132.) Her claim was denied initially and upon reconsideration at the administrative level. (Id. at 133, 153.) Jocelyn then sought and was granted a hearing in May 2021 before an Administrative Law Judge ("ALJ"), and she and a vocational expert ("VE") testified at the hearing. (Id. at 32-75, 184-85.) The ALJ determined in June 2021 that Jocelyn is not disabled. (Id. at 15-26.) The Appeals Council denied Jocelyn's request for

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Jocelyn's first name and last initial in this opinion to protect her privacy to the extent possible.

review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Jocelyn then filed an action for judicial review, and this court remanded the matter based on the parties' agreement. (See A.R. 1059-66.)

On remand the Appeals Council instructed the ALJ to reevaluate medical opinion evidence and reconsider Jocelyn's residual functional capacity ("RFC"). (Id. at 1069-70.) The ALJ found that a new hearing was not required and again determined that Jocelyn is not disabled. (See id. at 998-1016.) The Appeals Council denied Jocelyn's request for review, (id. at 988-91), and Jocelyn filed the instant action for judicial review. The parties later consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 6).

## Analysis

Jocelyn argues that the ALJ erred when: (1) finding at step four that she could perform past relevant work; (2) evaluating medical opinion evidence; (3) crafting her RFC; and (4) assessing her subjective symptoms. (See generally R. 18, Pl.'s Br.) The court finds that the ALJ supported her decision with substantial evidence.

### A. Symptom Assessment

The court turns first to Jocelyn's argument that the ALJ did not properly evaluate her symptom allegations because that analysis informs other aspects of the ALJ's decision. (R. 18, Pl.'s Br. at 13-16.) An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). Where, as here, the claimant alleges disabling pain, if the ALJ finds that the objective medical evidence does not support

such allegations, the ALJ must consider other factors under Social Security Ruling ("SSR") 16-3p, No. SSA-2015-0055, 2017 WL 5180304, at *3 (Oct. 25, 2017), such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors.

Here, the ALJ considered Jocelyn's disabling neck pain allegations resulting from degenerative disc disease of the cervical spine (status post-surgery) and lumbar spine, as well as osteoarthritis of the shoulders. (A.R. 1013-14.) To be sure, the ALJ acknowledged Jocelyn's allegations that "constant" neck pain "caused tingling in her fingers and left her unable to use zippers or perform other tasks with her hands" and required her to sit in a recliner most of the day. (Id. at 1013.) But the ALJ ultimately discounted those allegations in part because imaging from the relevant period "showed no central canal stenosis at any level of her cervical spine." (Id. (citing id. at 879-85 (September 2020 MRI of cervical spine noting "[c]ervical spinal fusion and decompression with cervical degenerative disc and joint disease" but which has "grossly unprogressed" since October 2017)).) The ALJ further observed that physical examinations "consistently showed no sensory abnormalities in her hands," full grip strength, and "no difficulty performing fine or gross manipulation." (Id. (citing id. at 711-14 (November 2019 consultative examination reflecting "normal" grip strength in both hands, "normal ability to grasp and manipulate objects," and ability to "fully extend the hands, make fists and oppose the fingers"), 773-76 (October 2020 consultative examination recording "[n]o pain")).) While Jocelyn at times displayed "reduced range of motion in her cervical spine and lumbar spine," as documented

during the October 2020 consultative examination, (id. (citing id. at 773-76); see also id. at 367 (May 2019 office visit recording limited range of motion in neck)), she had "no motor strength deficits, no signs of muscle atrophy and no other neurological deficits," (id. (citing id. at 363, 374 (April and July 2019 office visits recording normal physical exam))). The ALJ thus found Jocelyn's report that she was "unable to work in any capacity" inconsistent with the record. (Id. at 1013-14.)

Jocelyn contends the ALJ erred when finding that the September 2020 cervical spine MRI revealed "no spinal canal stenosis," and as such, the ALJ's decision lacks the support of substantial evidence. (R. 18, Pl.'s Br. at 13-14.) She points out that the same MRI shows "left neuroforaminal stenosis at C2-3," "a disc bulge with superimposed central disc protrusion" at C3-4, a disc bulge with disc protrusion at C4-5, neuroforaminal stenosis at C5-6, and "a disc bulge with superimposed central disc extrusion" at C6-7. (Id. at 13.) The government concedes that "the imaging did show some canal stenosis" but asserts remand is not appropriate because substantial evidence otherwise supports the ALJ's symptom assessment. (R. 24, Govt.'s Mem. at 11-12.) The court agrees that remand is not warranted on this issue.

Indeed, even if the ALJ misstated the stenosis findings from the September 2020 cervical spine MRI, (see A.R. 1013), Jocelyn has not shown how that purported "mistake[]" changes the outcome here, (R. 18, Pl.'s Br. at 13). The imaging impression cited by the ALJ notes that Jocelyn has a history of "[c]ervical spinal fusion and decompression with cervical degenerative disc and joint disease," which has "grossly unprogressed since 10/16/2017." (A.R. 1013 (citing id. at 884).) And neurosurgeon

Dr. Beejal Amin's October 2020 examination findings, which the ALJ discussed, show that despite reports of low back pain radiating down Jocelyn's legs, she had not participated in physical therapy or received injections, "was not in acute distress," had "full motor strength in all of her extremities" and intact sensation, and could "walk on her heels [and] toes and perform tandem gait testing without difficulty." (Id. at 1009 (citing id. at 809-11 (Dr. Amin's October 2020 treatment records noting that after a "detail[ed]" review of Jocelyn's September 2020 cervical spine imaging, he found: "evidence of a posterior cervical laminectomy defect from C4-6 with lateral mass screws"; "evidence of anterior hardware at C5-6"; and "no evidence of residual severe spinal cord compression")).) As a result of his examination, Dr. Amin merely recommended physical therapy twice weekly for six weeks and an epidural steroid injection. (Id. (citing id. at 811); see also id. at 962-73 (noting that Jocelyn participated in an initial consultation and two additional physical therapy sessions in late October 2020 based on Dr. Amin's referral).) The court therefore agrees with the government that the ALJ's misstatement of the MRI results does not necessitate remand given these "normal" examination findings. (See R. 24, Govt.'s Mem. at 12.)

Furthermore, the ALJ's alleged "mistake" here is not the only explanation she offered for discounting Jocelyn's allegations. The ALJ also found that despite Jocelyn's reports of difficulty using her hands to grasp or perform other tasks, examinations "showed no sensory abnormalities in her hands." (A.R. 1013-14.) The ALJ based this finding in part on the consultative examiners' determinations that Jocelyn had "normal" grip strength in both hands, "normal ability to grasp and

manipulate objects," and ability to "fully extend the hands, make fists and oppose the fingers," (id. (citing id. at 711-14 (November 2019 consultative examination))), with "no pain," (id. (citing id. at 773-76 (October 2020 consultative examination))). The ALJ also relied upon repeated examinations showing "no motor strength deficits, no signs of muscle atrophy and no other neurological deficits." (Id. (citing id. at 363 (July 2019 office visit recording normal physical exam), 374 (April 2019 office visit recording same)).)

In addition to the objective medical evidence, the ALJ considered treatment Jocelyn received during the applicable period, which was limited to medication for diabetes, hypertension, depression, and back, neck, and right knee pain, except for a few physical therapy sessions in late October 2020. (Id. at 1005-14 (citing id. at 962-73).) Jocelyn argues that her "willingness to take [] medication and her doctors' willingness to provide it" support her "reports of significant pain and limits." (R. 18, Pl.'s Br. at 15.) But the government correctly counters that under SSR 16-3p, the ALJ appropriately determined that "the frequency or extent of the treatment [Jocelyn] sought" was "not comparable with the degree of [her] subjective complaints." (R. 24, Govt.'s Mem. at 12-13.)

Likewise, the ALJ considered Jocelyn's daily activities, including "prepar[ing] meals, do[ing] some household chores, shop[ping] in stores . . . finishing things she started[,] and . . . driv[ing] a car," and found they undercut her reports of inability "to work in any capacity." (A.R. 1013-14 (citing id. at 297-99).) Jocelyn complains that the ALJ failed to "explain how any of those activities undermined [her] reported

symptoms and limitations." (R. 18, Pl.'s Br. at 15.) However, the ALJ considered Jocelyn's allegations of "[n]o strength in hands" and "long periods [of] severe pain," along with being confined to a recliner and experiencing constant pain, and determined that they were inconsistent with the activities she reported. (See A.R. 1013-14 (citing id. at 296-99, 304 (November 2019 function report)).) While the ALJ could have provided a more "specific" analysis of Jocelyn's daily activities, as the government concedes, (see R. 24, Govt.'s Mem. at 14), the Seventh Circuit has cautioned against requiring more of an ALJ than "only the most minimal of articulation requirements" because of the "extraordinary demands" placed on them, *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (instructing that "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning," so long as she minimally articulates how the evidence supports her conclusion). In sum, the ALJ supplied enough evidence to support her symptom evaluation.

**B. Opinion Evidence**

Jocelyn also challenges the ALJ's evaluation of treating physician Dr. Chandrarekha Kaza's opinions, (R. 18, Pl.'s Br. at 7-10), which the ALJ deemed "not persuasive" because they are "not well supported" and "inconsistent with the evidence," (A.R. 1010-11). An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must assess the persuasiveness of all

medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations the medical source presented and used, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how she considered the source's specializations and relationship with the claimant and any other factors tending to support or contradict their opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Dr. Kaza submitted opinions on Jocelyn's behalf in February 2016, February 2020, and March 2021. (A.R. 1010-11 (citing id. at 343-47, 724-26, 959-61).) Those opinions note in relevant part that Jocelyn could "sit, stand or walk for less than two hours a day" and "had significantly limited use of her upper extremities and hands." (Id. at 1010 (citing id. at 347, 725, 960).) The ALJ deemed them "not persuasive" because Dr. Kaza used "check box forms" and listed only Jocelyn's "diagnoses and subjective reports of pain" for support. (Id.)

The ALJ found that Dr. Kaza's opinions lacked supportability because: "h[er] exams did not show any abnormalities in [Jocelyn's] motor strength, neurological functioning, [or] her arms or [] hands"; her treatment notes reflect only one instance of mild swelling in Jocelyn's feet in July 2019, even though she opined that Jocelyn needed to elevate her legs because of "[e]dema [and] neuropathy"; and she never

prescribed an assistive device for Jocelyn despite endorsing a need for a cane. (Id.) And although Dr. Kaza opined that Jocelyn's pain-related concentration issues prevent her from performing even simple tasks, "h[er] exam notes consistently showed [Jocelyn] was not in acute distress and . . . did not note any cognitive or concentration deficits." (Id.; compare id. at 343-47, 724-26, 959-61 (Dr. Kaza's February 2016, February 2020, and March 2021 opinions indicating Jocelyn's pain or medication side effects severely affected her ability to maintain attention and concentration) with id. at 363 (July 2019 progress note indicating Jocelyn was alert and awake with appropriate mood/affect), 367 (May 2019 progress note reflecting Jocelyn had normal affect and mood and unimpaired memory), 628 (November 2017 progress note revealing Jocelyn had unimpaired judgment, "normal attention span," and intact short-term memory), 747 (March 2020 progress note showing Jocelyn had normal affect and mood and unimpaired memory).) Additionally, Jocelyn herself stated in her function report that she could pay attention for "hours." (Id. at 1002 (citing id. at 301).)

The ALJ further determined that Dr. Kaza's opinions were "not consistent with the medical evidence" as a whole, including the consultative examinations. (Id. at 1010.) For instance, Dr. Kaza opined that Jocelyn had significant limitations in her ability to grasp, push and pull, manipulate, and reach. (Id. (citing id. at 347, 725, 960).) But the ALJ pointed out that the consultative examiners disagreed, finding Jocelyn had "normal" grip strength in both hands, "normal ability to grasp and manipulate objects," and ability to "fully extend the hands, make fists and oppose the

fingers," (id. (citing id. at 711-14 (November 2019 examination))), without pain, (id. (citing id. at 773-76 (October 2020 examination))). Dr. Kaza similarly assigned a substantial limitation to Jocelyn's ability to "sit, stand or walk," finding she could do so "for less than two hours a day." (Id. (citing id. at 347, 725, 960).) But the ALJ noted that other medical evidence shows she "could walk unassisted, she had full motor strength in all areas, her neck was supple[,] and she had no neurological abnormalities on exam." (Id. at 1010-11 (citing id. at 374 (Dr. Kaza's April 2019 progress note reflecting "supple neck" and no edema in lower extremities), 712-13 (November 2019 examination showing "no tenderness" in neck, "no difficulty" getting on and off exam table, ability to walk more than 50 feet unassisted, and tenderness on cervical and lumbar spine but normal range of motion), 775 (normal lower extremity joints, except for reduced range of motion in right knee, and normal sensation and motor system "with strength in all extremities," but no ability to heel-toe walk, squat and arise, or get on and off exam table without assistance)).)

Jocelyn nonetheless asserts that the ALJ failed to explain her conclusions regarding Dr. Kaza's opinions. (R. 18, Pl.'s Br. at 7-10.) For example, she quibbles with the ALJ's discounting of Dr. Kaza's opinions based on her use of check-box forms. (Id. at 7-8.) But the ALJ did not rely on that fact alone. Rather, she cited to a host of medical evidence supporting her opinion evaluation. (See A.R. 1010-11.) Jocelyn next suggests that the ALJ rendered her "own independent medical findings" instead of relying on medical evidence to support the opinion evaluation. (R. 18, Pl.'s Br. at 8 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).) This argument is not

developed, but even if it were, the ALJ's analysis proves otherwise. (See A.R. 1005-09 (discussing in detail medical evidence of record).) And Jocelyn complains that the ALJ improperly discounted her need for a cane, even though Dr. Kaza did not prescribe one. (R. 18, Pl.'s Br. at 9-10.) Jocelyn contends that her ability to walk 50 feet unassisted in a doctor's office says nothing about her ability to do so in a work situation. (Id. at 8-9.) That may be true where "the ALJ did not identify any medical evidence to substantiate her belief that [the claimant] is capable of meeting those physical requirements," *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), but that is not the case here. In any event, the VE testified that Jocelyn could return to her past relevant work even if she required a cane to walk, (A.R. 70-71)—and Jocelyn herself stated that she uses a cane only "occasionally," (id. at 830). Accordingly, the ALJ provided a detailed explanation as to why Dr. Kaza's opinions were neither supported by her own records nor consistent with other medical evidence. (See A.R. 1011); *see also* 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2), 416.920c(c)(1) & (c)(2). There was no error here.

### C. Physical RFC

Jocelyn argues that the ALJ failed to explain how the RFC accommodates her sitting and manipulation restrictions. (R. 18, Pl.'s Br. at 10-12.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's

severe and non-severe limitations into the RFC and cannot dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020).

Here, the ALJ found that Jocelyn has the RFC to perform sedentary work, except that she can never climb ladders, ropes, or scaffolds, cannot have concentrated exposure to vibrations, or work near unprotected heights, open flames, or dangerous moving machinery, and can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, push and pull controls with her upper extremities, and reach overhead. (A.R. 1004.) Jocelyn says the ALJ should have limited her to sitting at less than the sedentary level because she can sit for only "30 to 40 minutes at one time." (Id. at 11.) The ALJ acknowledged Jocelyn's report that she suffers "chronic pain in her back that le[aves] her unable to walk or sit for extended periods." (A.R. 1004.) The ALJ also considered that "[t]he combination of the cervical and lumbar spine conditions with pain on prolonged standing or walking with degenerative joint disease in the knee," combined with obesity, "likely exacerbates both back and knee pain." (Id. at 1012.) But whereas Jocelyn says this evidence calls for a less-than-sedentary RFC, (see R. 18, Pl.'s Br. at 11-12), the ALJ relied on the November 2020 opinion of Dr. Prasad Kareti, the state agency reviewing physician on reconsideration, indicating that Jocelyn could sit for six hours in an eight-hour workday[2] because Dr. Kareti provided a detailed narrative citing to medical evidence

[2] The ALJ noted that the state agency reviewing physician at the initial level, Dr. Vidya Madala, rendered an "identical" opinion to that of Dr. Kareti, except that Dr. Madala opined that Jocelyn was "incapable of sitting for more than 2 hours," whereas Dr. Kareti opined that Jocelyn could sit for 6 hours in a workday. (A.R. 1012 (citing id. at 127-30, 145-49).) The ALJ surmised that Dr. Madala made an "input

supporting Jocelyn's need for exertional, postural, manipulation, and environmental limitations but not at the level she alleged, (A.R. 1012 (citing id. at 144-49)). Indeed, while Dr. Kareti acknowledged that Jocelyn had restricted range of motion in the right knee, neck, and lower back, a BMI of 43.8, and difficulty "heel/toe [walking] and squat[ting]/aris[ing]," he found that Jocelyn's "[m]otor strength and sensation w[ere] intact" and she could "get on/off the exam table with assistance." (Id. at 149.) This opinion evidence constitutes substantial evidence to support the ALJ's RFC assessment.

Jocelyn cites to additional evidence, such as a lumbar radiculopathy diagnosis, purportedly showing a need for greater sitting restrictions. (R. 18, Pl.'s Br. at 11-12.) However, an ALJ "is responsible for assessing" a claimant's RFC, 20 C.F.R. § 404.1546(c), and the ALJ expressly considered Jocelyn's degenerative disc disease in her lumbar spine, in combination with her other impairments, when crafting her RFC, (see A.R. 1012). To the extent Jocelyn claims certain evidence requires a different result, (see, e.g., R. 18, Pl.'s Br. at 11-12), the government is correct that such an argument constitutes an "improper demand to reweigh evidence," (R. 24, Govt.'s Mem. at 4).

Jocelyn next argues that the RFC fails to account for her "trigger finger," which she says requires her to manually lift her finger. (R. 18, Pl.'s Br. at 12.) The ALJ

---

error," but said she could not "speculate on that." (Id.) In any event, the ALJ explained why she found Dr. Madala's opinion "not persuasive," (id. at 1011), and Jocelyn does not develop an argument challenging that finding here, (see generally R. 18, Pl.'s Br.).

acknowledged Dr. Kaza's finding that Jocelyn had a trigger finger, (see A.R. 1001, 1006 (citing id. at 367 (May 2019 record noting that Jocelyn had a trigger finger))), but determined that the evidence did not support handling and fingering limitations, (id. at 1010 (finding that "[w]hile Dr. Kaza noted [Jocelyn] had significantly limited use of her hands," the consultative exams show otherwise)). To be sure and as noted, the consultative examiners found that Jocelyn had "normal" grip strength in both hands, "normal ability to grasp and manipulate objects," and ability to "fully extend the hands, make fists and oppose the fingers," (id. (citing id. at 711-14 (November 2019 examination))), without pain, (id. (citing id. at 773-76 (October 2020 examination))). Thus, the ALJ supplied sufficient evidence to support the RFC she assessed.

**D. Past Relevant Work**

Lastly, Jocelyn argues that the ALJ's finding that she could perform her past relevant work no longer stands because on June 22, 2024, the Social Security Administration ("SSA") implemented a new ruling, SSR 24-2p, No. SSA-2024-0003, 2024 WL 3291790, at *1-3, and corresponding regulation, 20 C.F.R. § 404.1560(b)(1), reducing the 15-year look-back period for past relevant work to 5 years. (See R. 18, Pl.'s Br. at 5-6.) Jocelyn contends that this court should not "adhere to outdated time frames" but rather award her benefits under the new 5-year time frame because she stopped working in 2014. (R. 18, Pl.'s Br. at 6.)

But when it issued SSR 24-2p, the SSA directed federal courts to "review [its] final decisions using the rules that were in effect at the time [it] issued decisions"

regarding disability benefits. 2024 WL 3291790, at *2 & nn.1-2. Pursuant to this directive, courts in this district have rejected arguments favoring retroactive application of SSR 24-2p where, as here, the rule was not in effect at the time of the ALJ's decision. (See generally A.R. 998-1016 (ALJ's written decision issued on June 30, 2023)); *see also Darrell E. v. Bisignano*, No. 24 CV 4334, 2026 WL 1815682, at *2-3 (N.D. Ill. June 24, 2026) (finding that the court "cannot disregard the [SSA's] clear directive against applying regulations that were not in effect at the time of the ALJ's decision"); *Nona A. v. Bisignano*, No. 25 CV 5796, 2026 WL 1734652, at *3 (N.D. Ill. June 16, 2026) (finding that the claimant's "contention that SSR 24-2p provides a basis for reversal is easily disposed of, as SSR 24-2p became effective on June 22, 2024, and was not in place at the time of the ALJ's decision"); *Sylvia R. v. Bisignano*, No. 25 CV 2326, 2026 WL 1121962, at *7 (N.D. Ill. April 24, 2026) (finding that the prior ruling, SSR 82-62, directs federal courts "to apply the fifteen-year time frame for cases with ALJ decisions dated prior to June 22, 2024," and "[o]nly if a case is remanded will a court then apply the new five-year limit to the entire time period").

Jocelyn argues that the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024), requires a finding in her favor because administrative agencies like the SSA "no longer have the same deference as previously accorded with statutory interpretation." (See R. 18, Pl.'s Br. at 6-7.) But as the court found in *Darrell E.*, 2026 WL 1815682, at *3, "'*Loper Bright* is inapplicable' in this context" because the claimant—here, Jocelyn—does not challenge "deference to the [SSA's] interpretation of an ambiguous statute." Instead,

she complains that the SSA's "interpretation of its own regulations is unreasonable both as to the timeframe for consideration for past relevant work as well as the requirement that courts apply the regulations in effect at the time of the ALJ's decision." *Id.* *Loper Bright* is therefore inapplicable, and neither remand nor an award of benefits is appropriate.

## Conclusion

For the foregoing reasons, Jocelyn's remand request is denied, and the Commissioner's final decision is affirmed.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**